IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545<br><br>Master Docket Case No. 1:14-cv-01748<br><br>Honorable Matthew Kennelly |
| MORRIS GAHAFER,<br><br>                Plaintiff,<br>vs.<br><br>ACTAVIS, INC.;<br>ACTAVIS PHARMA, INC.;<br>ANDA, INC.; WATSON LABORATORIES, INC. A NEVADA CORPORATION; WATSON LABORATORIES, INC. A DELAWARE CORPORATION;<br><br>             Defendants. | COMPLAINT JURY DEMAND<br><br>Civil Action No.: 1:15-cv-957 |

## COMPLAINT

MORRIS GAHAFER, ("Plaintiff"), residing in Fayette County, Kentucky, by and through his undersigned counsel, hereby sues Defendants Actavis, Inc., Actavis Pharma, Inc., Anda, Inc., and Watson Laboratories, Inc. ("Defendants"), and alleges as follows:

## INTRODUCTION

1.      This case involves the prescription drug Androderm, which is manufactured, sold, distributed, marketed and promoted by Defendants as a testosterone replacement therapy.

1

2.     Defendants misrepresented that Androderm is a safe and effective treatment for hypogonadism or "low testosterone," when in fact the drug causes serious medical problems, including life threatening cardiac events, strokes, and thrombolytic events.

3.     Defendants engaged in aggressive direct-to-consumer and physician marketing and advertising campaigns promoting Androderm, as well as an aggressive unbranded "disease awareness" campaign to alert men that they might be suffering from low testosterone, or "Low-T," levels.

4.     Defendants' marketing campaigns have been enormously successful, convincing millions of men that they need testosterone replacement therapy, and Androderm sales have skyrocketed as a result.

5.     However, consumers of Androderm, such as Plaintiff, were misled as to the drug's safety and efficacy, and as a result such consumers have suffered serious injuries, including life-threatening cardiac events, strokes, and thombolytic events.

## PARTIES

6.     Plaintiff is a natural person and a citizen of the State of Kentucky.

7.     Defendant Actavis, Inc. (formerly known as Watson Pharmaceuticals, Inc.) is a corporation organized and existing under the laws of the State of Nevada and has a principal place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey 07054. Actavis, Inc. may be served at The Corporation Trust Company, 311 South Division Street, Carson City, NV 89703.

8.     Defendant Actavis Pharma, Inc. (formerly known as Watson Pharma, Inc.) is a corporation organized and existing under the laws of the State of Delaware and has a principal place of business at Morris Corporate Center III, 400 lnterpace Parkway, Parsippany, New Jersey

2

07054. Actavis Pharma Inc. may be served at The Corporation Trust Company, 311 South Division Street, Carson City, NV 89703.

9.     Defendant Anda, Inc. is a corporation organized and existing under the laws of the State of Florida and has a principal place of business at 2915 Weston Road, Weston, Florida 33331. Anda, Inc. may be served at CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

10.     Defendant Watson Laboratories, Inc. a Nevada corporation, is a corporation organized and existing under the laws of the State of Nevada and has a principal place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey 07054. Watson Laboratories, Inc. a Nevada corporation, may be served at The Corporation Trust Company, 311 South Division Street, Carson City, NV 89703.

11.     Defendant Watson Laboratories, Inc. a Delaware corporation, is a corporation organized and existing under the laws of the State of Delaware and has a principal place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey 07054. Watson Laboratories, Inc. a Delaware corporation, may be served at The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

12.     By way of background, Watson Pharmaceuticals, Inc. acquired Actavis Group in November 2012 and adopted Actavis' name for its global operations. Watson Laboratories, Inc., Actavis Pharma, Inc., and Anda, Inc. are wholly-owned subsidiaries of Actavis, Inc.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over Defendants and this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and because the amount in controversy between Plaintiffs and Defendants exceeds $75,000, exclusive

of interest and cost, and because, among other reasons, Defendants have significant contacts with this district by virtue of doing business within this judicial district.

14.     Venue is proper within this district pursuant to 28 U.S.C. § 1391 because Defendants reside in this district and because a substantial part of the acts and/or omissions giving rise to these claims occurred within this district.

## GENERAL ALLEGATIONS

15.     This is an action for damages suffered by Plaintiff, Morris Gahafer, who used the testosterone therapy Androderm (hereinafter referred to as Androderm).

16.     Plaintiff files this action within the applicable limitations period based on the date of Plaintiffs injuries.

17.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the testosterone therapy Androderm for use and application by consumers such as Plaintiff.

18.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

19.     At all times herein mentioned, the officers and directors of Defendants participated in, authorized, and directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care should have known, of the hazards and

4

dangerous propensities of said product, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by Plaintiff.

## OVERVIEW

20.     Androderm is Defendants' trade name for their testosterone transdermal system (patch) designed to deliver testosterone continuously for 24 hours following application to intact, non-scrotal skin (e.g., back, abdomen, thighs, and upper arms). Androderm was approved by The Food and Drug Administration in September, 1995.

21.     Androderm is a form of testosterone replacement therapy, indicated for treatment and prevention of low testosterone levels caused by hypogonadism.

22.     Hypogonadism is a specific condition of the sex glands, which, in men, may result in the diminished production, or nonproduction of testosterone.

23.     In men, testosterone levels normally begin a gradual decline after the age of thirty.

24.     The average testosterone levels for most men range from 300 to 1,000 nanograms per deciliter of blood. However, testosterone levels can fluctuate greatly depending on the many factors, including sleep, time of day and medication. Resultantly, many men who fall into the hypogonadal range on one day will have normal testosterone levels on the following day.

25.     Defendants and other pharmaceutical companies involved in testosterone replacement therapy engaged in aggressive direct-to-consumer and physician marketing and advertising campaigns promoting these therapies, including Androderm, as well as an aggressive unbranded "disease awareness" campaign to alert men that they might be suffering from low testosterone, or "Low-T" levels. These marketing campaigns included television advertisements, promotional literature distributed to healthcare providers' offices and potential Androderm users, and online media campaigns. Defendants and other unnamed pharmaceutical companies also

5

sought to convince primary care physicians that low testosterone levels are widely under-diagnosed. Defendants and other unnamed corporations involved in the manufacture, sale, distribution, marketing and promotion of testosterone replacement therapy products collectively spent tens of millions of dollars promoting testosterone replacement therapy.

26.     These marketing campaigns have been enormously successful, convincing millions of men and their physicians that they need testosterone replacement therapy. In 1999, pharmaceutical companies involved in testosterone replacement therapy estimated that hypogonadism affected approximately "one million American men." In 2000, the market for testosterone therapy had grown to "four to five million American men." Three years later, in 2003, the market had increased to "up to 20 million men." According to Shannon Pettypiece, *Are Testosterone Drugs the Next Viagra?*, Bloomberg BusinessWeek, May 10, 2012, estimates indicate that sales of testosterone therapies are expected to triple in the next few years, bringing in over $5 billion by the year 2017.

27.     According to a study published in the Journal of the American Medical Association ("JAMA") in August 2013, titled "Trends in Androgen Prescribing in the United States, 2001-2011," many men who receive testosterone prescriptions have no evidence of hypogonadism. For example, one third of men prescribed testosterone had a diagnosis of fatigue, and one quarter of men did not even have their testosterone levels tested before they received a testosterone prescription.

28.     Most experts would agree that symptoms such as fatigue, increased body fat or moodiness – symptoms that Defendants and other companies involved in marketing testosterone therapies often attribute to low testosterone levels – can be caused by an abundance of factors, the most prominent of which is the natural aging process. However, as a result of Defendants'

6

"disease mongering," as termed by Dr. Adirane Fugh-Berman of Georgetown University Medical Center, the number of individuals diagnosed with Low testosterone has increased exponentially.

29.     A number of scientific studies have produced results that suggest that testosterone therapy can increase the risk of cardiac events, strokes and thrombolytic events.

30.     In 2010, a New England Journal of Medicine Study, "Adverse Events Associated with Testosterone Administration," was stopped after an alarmingly high number of participants suffered serious adverse events.

31.     In November of 2013, the results of a JAMA study titled "Association of Testosterone Therapy with Mortality, Myocardial Infarction, and Stroke in Men with Low Testosterone Levels" were released. The JAMA study indicated that testosterone therapy raised the risk of death, heart attack and stroke by approximately 30%.

32.     On January 29, 2014, a study was released in PLOS ONE titled "Increased Risk of Non-Fatal Myocardial Infarction Following Testosterone Therapy Prescription in Men," which indicated that testosterone use doubled the risk of heart attacks in men over sixty five years old and men younger than sixty five with a previous diagnosis of heart disease.

33.     As manufacturers, developers, distributors, and sellers of prescription drug products, specifically Androderm, the Defendants have a duty to adequately communicate warnings to physicians and the medical community (or to patients who could be expected to take Androderm), to exercise due care to conduct safety surveillance for Androderm, to ensure that the required warnings are accurate and adequate, and to ensure that these warnings are effectively communicated to physicians, pharmacists, and patients using Androderm.

34. Defendants also have a post-sale duty to warn the medical, pharmaceutical and scientific communities, and users and consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with the use of Androderm in a timely manner.

35. At all relevant times alleged herein, Defendants were under a duty to disclose to Plaintiff, Plaintiff's prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, the Food and Drug Administration ("FDA"), and the public in general, the defective nature of Androderm.

36. Defendants had sole access to material facts concerning the defective nature of Androderm and its propensity to cause serious and dangerous side effects, and hence, cause damage to consumers, including Plaintiff.

37. In representations to Plaintiff, Plaintiff's prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, the FDA, and the public in general, Defendants made misrepresentations and actively concealed information concerning the safety and efficacy of Androderm in their labeling, advertising, product inserts, promotional material or other marketing efforts.

38. Defendants fraudulently concealed and intentionally omitted the following material information from Plaintiff, prescribing physicians, healthcare providers, the FDA, consumers and the general public:

    a. That Androderm is unsafe and dangerous to users,

    b. That the risk of adverse events with Androderm was higher than represented,

    c. That Androderm was not adequately tested by Defendants;

    d.   That users were put at risk of experiencing serious and dangerous side effects including, but not limited to cardiac events, strokes, and thrombolytic events, as well as other severe and personal injuries, physical pain, and mental anguish.

    e.   That patients needed to be monitored more regularly than normal while using Androderm and

    f.   That Androderm was designed, tested, manufactured, marketed, produced, distributed and advertised negligently, defectively, fraudulently and improperly.

39.    The many misrepresentations and active concealments by Defendants were perpetuated directly and indirectly by Defendants; their sales representative, employees, distributors, agents and detail persons.

40.    Defendants made the misrepresentations and actively concealed information concerning the safety and efficacy of Androderm with the intention and specific desire that the medical, pharmaceutical and scientific communities, and consumers, including Plaintiff, and his prescribing physicians and healthcare providers, would rely on such in selecting Androderm.

41.    Defendants knew that Plaintiff, physicians, pharmacists, the medical community in general, and others similarly situated relied on Defendants to disclose and communicate to doctors what they knew and what experts in the use and effects of the drug would know from a prudent review of the information that they possessed or where reasonably able to obtain.

42.    Defendants knew that Plaintiff, his prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, the FDA, and the public in general had no way to determine the truth behind Defendants' concealment and omissions.

43.    At all times material hereto, the Defendants knew or should have known that most physicians were not aware of or did not fully appreciate the seriousness of the risks associated

with use of Androderm. Defendants also knew or should have known that the monograph for Androderm and the package inserts for Androderm were deficient, inaccurate, false, and misleading in communicating to the medical community in general, to physicians, or to the public, information about the risks associated with the drug.

44.    Defendants knew or, through the exercise of reasonable care, should have known that the labeling for Androderm substantially understated the risks, overstated the efficacy of the drug, and included material omissions of facts surrounding Androderm, as set forth herein. They failed to use reasonable care to ascertain or communicate to physicians or to the public information that would constitute adequate and effective warnings to physicians or to the public about the true risks of the drug and the effects of long-term use.

45.    Defendants were aware that their individual and collective failure to communicate to the medical community and to physicians information known to them about the risks of testosterone therapy would likely result in serious injury to patients who received the drug via prescriptions issued by physicians who were unaware of this information. By failing to communicate this information to the medical community or the FDA, the Defendants acted in willful and wanton disregard of the rights of Plaintiff and others similarly situated to Plaintiff, and this conduct caused serious injury to Plaintiff.

46.    As a result of the Defendants' advertising and marketing efforts, and representations, Androderm was and continues to be pervasively prescribed and used throughout the United States.

47.    During the time that Androderm has been sold in the United States, many reports of injury and death associated with Androderm have been submitted to the FDA.

48.     Defendants breached their duty to ensure that adequate warnings were provided to the medical community, Plaintiffs physicians, Plaintiff, and/or other foreseeable Androderm users similarly situated by failing to:

a.  Ensure that Androderm warnings to the medical community, physicians, and Plaintiff's physician were accurate and adequate,

b.  Ensure that Androderm warnings were effectively communicated to the medical community, physicians and Plaintiff;

c.  Conduct post market safety surveillance and report that information to the FDA, the medical community, Plaintiff's physicians, Plaintiff and other foreseeable users;

d.  Review all adverse drug event ("ADE") information, and to report information bearing significantly upon the adequacy and/or accuracy of its warnings, efficacy or safety, including the risks and/or prevalence of side effects caused by Androderm to the FDA, medical community, Plaintiff's physicians, Plaintiff and other like foreseeable users;

e.  Periodically review all medical literature regarding Androderm and report to the FDA, the medical community, or other interested individuals significant data concerning the efficacy or safety of Androderm;

f.  Independently monitor sales of Androderm and the medical literature, which would have alerted them to the fact that Androderm was widely over prescribed, owing to the inadequate warnings provided to doctors;

g.  Engage in responsible testing, research, and pharmacovigilance practices regarding Androderm including properly performing studies to accurately

determine the risks attendant to both short and long-term Androderm use and properly engaging in marketing practices designed to minimize the risks associated with Androderm.

## CASE-SPECIFIC ALLEGATIONS

49. Plaintiff, Morris Gahafer, was born on April 18, 1948.

50. As a result of Defendants' claims regarding the effectiveness and safety of Androderm, Plaintiff, was prescribed and used Androderm prior to his injury.

51. Plaintiff used Androderm as prescribed, as directed, and in a reasonably foreseeable manner.

52. Plaintiff used Androderm that had been provided to him in a condition that was substantially the same as the condition in which it was manufactured and sold.

53. On or about January 27, 2012, as a direct and proximate result of using Androderm, Plaintiff suffered from the injuries and damages alleged herein, including a myocardial infarction, requiring hospitalization, continuing treatment and medical monitoring.

54. Plaintiff, as a direct and proximate result of using Androderm, suffered mental and physical pain and suffering and has sustained permanent injuries, emotional distress and diminished enjoyment of life.

55. Plaintiff would not have used Androderm had Defendants properly disclosed the risks associated with the drug.

56. The acts, conduct, and omissions of Defendants, and each of them, as alleged throughout this Complaint were fraudulent, willful and malicious and were done with a conscious disregard for the rights of Plaintiff and other users of Androderm, and for the primary purpose of increasing Defendants' profits from the sale and distribution of Androderm. Defendants'

outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against each Defendant in an amount appropriate to punish and make an example of each Defendant.

57.     Prior to the manufacturing, sale and distribution of Androderm, Defendants, and each of them, knew that Androderm was in a defective condition as previously described herein and knew that those who were prescribed Androderm would experience and did experience severe physical mental, and emotional injuries. Further, Defendants and each of them through their officers, directors, managers, and agents, had knowledge that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiff and as such, consumers of Androderm were unreasonably subjected to risk of injury or death.

58.     Despite such knowledge, Defendants, and each of them, acting through their officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in Androderm and failed to warn the public, including Plaintiff, prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, the FDA, and the public in general of the extreme risk of injury occasioned by said defects inherent in Androderm. Defendants and their individual agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution and marketing of Androderm knowing that the public, including Plaintiff would be exposed to serious danger in order to advance Defendants' own pecuniary interest and monetary profits.

59.     Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for safety.

13

60.     The acts, conduct, and omissions of Defendants, and each of them, as alleged throughout this Complaint were fraudulent, willful and malicious and were done with a conscious disregard for the rights of Plaintiff and other users of Androderm, and for the primary purpose of increasing Defendants' profits from the sale and distribution of Androderm. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against each Defendant in an amount appropriate to punish and make an example of each Defendant.

**FIRST CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**

61.     Plaintiff hereby restates and realleges each and every allegation set forth above, with the same force and effect as if fully set forth herein.

62.     Androderm was designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Defendants.

63.     When it left the control of Defendants, Androderm was expected to, and did reach Plaintiff without substantial change from the condition in which it left Defendants' control.

64.     Androderm was defective when it left Defendants' control and was placed in the stream of commerce, in that there were foreseeable risks that exceeded the benefits of the products and/or that it deviated from product specifications and/or applicable federal requirements, and posed a risk of serious injury and death.

65.     Specifically, Androderm was more likely to cause heart attacks, strokes, and the development of deep vein thrombosis and/or pulmonary embolism, and death than other similar medications.

66.     Plaintiff used Androderm in substantially the same condition it was in when it left control of Defendants and any changes or modifications were foreseeable by Defendants.

67.    Plaintiff and his healthcare providers did not misuse or materially alter the Androderm.

68.    As a direct and proximate result of Plaintiffs use of Androderm, he suffered serious physical injury, harm, damages and economic loss, and will continue to suffer harm, damages and economic loss in the future.

69.    Defendants are strictly liable to Plaintiff for designing, creating, manufacturing, distributing, selling, and placing Androderm into the stream of commerce, and for all damages caused to Plaintiff by his use-of Androderm because the product was defective.

70.    Defendants' actions and omissions as alleged in this Complaint constitute a flagrant disregard for human life, so as to warrant to imposition of punitive damages.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

71.    Plaintiff incorporates each paragraph of this Complaint as if set forth fully herein and further alleges as follows.

72.    Androderm was not merchantable and/or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by Plaintiff.

73.    Defendants place Androderm into the stream of commerce with wanton and reckless disregard for the public safety.

74.    Androderm was defective in design in that, when it left Defendants' control, the foreseeable risks of the product exceeded the benefits associated with its design, and it was more dangerous than an ordinary consumer or ordinary healthcare provider would expect.

15

75. The foreseebale risks associated with Androderm's design include the fact that its design is more dangerous than a reasonably prudent consumer or healthcare provider would expect when used in an intended or reasonably foreseeable manner.

76. Androderm was unsafe, defective, and inherently dangerous, which was unreasonably dangerous to its users, and in particular, Plaintiff.

77. Androderm was in defective conditions and unsafe, and Defendants knew, had reason to know, or should have known that Androderm was defective and unsafe, even when used as instructed.

78. The nature and magnitude of the risk of harm associated with the design of Androderm, including the risk of suffering a heart attack, stroke, developing a deep vein thrombosis and pulmonary embolism, and death, is high in light of the intended and reasonably foreseeable use of Androderm.

79. The risk of harm associated with the design of Androderm is higher than necessary.

80. It is highly unlikely that Androderm users would be aware of the risks associated with Androderm through either warnings, general knowledge or otherwise, and Plaintiff specifically was not aware of these risks.

81. The designs did not conform to any applicable public or private product standard that was in effect when Androderm left the Defendants' control.

82. Androderm's design is more dangerous than a reasonably prudent consumer would expect when used as intended or in a reasonably foreseeable manner as a form of testosterone replacement. It was more dangerous than Plaintiff expected.

83. The intended or actual utility of Androderm is not of such benefit to justify the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

16

84. At the time Androderm left Defendants' control, it was both technically and economically feasible to have alternative designs that would not cause heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death or alternative designs that would have substantially reduced the risks of these injuries.

85. It was both technically and economically feasible to provide a safer alternative product that would have prevented the harm suffered by Plaintiff.

86. The unreasonably dangerous nature of Androderm caused serious harm to Plaintiff.

87. As a drect and proximate result of the Plaintiff's use of Androderm, which was designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Defendants, Plaintiff suffered serious physical injury, harm, damages, and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## THIRD CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

88. Plaintiff incorporates each paragraph of this Complaint a if set forth fully herein and further alleges as follows.

89. Defendants had a duty to warn Plaintiff and his healthcare providers of the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death associated with Androderm.

90. Defendants knew, or in the exercise of reasonable care should have known, about the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death associated with Androderm.

91.     Defendants failed to provide warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of stroke, deep vein thrombosis, pulmonary embolism and/or death, in light of the likelihood that then-products would cause these injuries.

92.     Defendants failed to update warnings based on information received from product surveillance after Androderm was first approved by the FDA and marketed, sold, and used in the United States and throughout the world.

93.     A manufacturer exercising reasonable care would have updated its warnings on the basis of reports of injuries to men using Androderm after FDA approval.

94.     When it left Defendants' control, Androderm was defective and unreasonably dangerous for failing to warn of the risk of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

95.     Plaintiff used Androderm for its approved purpose and in a manner normally intended and reasonable foreseeable by the Defendants.

96.     Plaintiff and Plaintiff's healthcare providers could not, by the exercise of reasonable care, have discovered the defects or perceived their danger because the risks were not open or obvious.

97.     Defendants, as the manufacturers and distributors of Androderm are held to the level of knowledge of an expert in the field.

98.     The warnings that were given by Defendants were not accurate or clear, and were false and ambiguous.

99.     The warnings that were given by the Defendants failed to properly warn physicians of the risks associated with Androderm, subjecting Plaintiff to risks that exceeded the benefits to

18

the Plaintiff. Plaintiff, individually and through his physician, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

100. Defendants had a continuing duty to warn plaintiff and his prescriber of the dangers associated with its product.

101. Had Plaintiff or his healthcare providers received adequate warnings regarding the risks associated with the use of Androderm, he would not have used it.

102. As a direct and proximate result of the Plaintiffs use of Androderm and Plaintiffs reliance on Defendants' representations regarding the character and quality of the product and Defendants' failure to comply with federal requirements, Plaintiff suffered serious physical injury, harm, damages and economic loss in the future.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## FOURTH CAUSE OF ACTION
## NEGLIGENCE

103. Plaintiff incorporates each paragraph of this Complaint as if set forth fully herein and further alleges as follows.

104. Defendants had a duty to exercise reasonable and ordinary care in the design, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of Androderm into the stream of commerce, including a duty to assure that their products did not pose an undue risk of bodily harm and adverse events, and to properly warn of all risks, and comply with federal requirements.

105. Defendants failed to exercise reasonable and ordinary care in the design, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions,

and distribution of Androderm into the stream of commerce in that Defendants knew or should have known that the products caused significant bodily harm and were not safe for use by consumers.

106.    Specifically, Defendants failed to properly warn and thoroughly:

a.    Test Androderm before releasing it into the market;

b.    Analyze the data resulting from the pre-marketing tests of Androderm;

c.    Conduct sufficient post-marketing testing and surveillance of Androderm; and

d.    Provide appropriate warnings for consumers and healthcare providers including disclosure of the known or potential risks or true or suspected rates of heart attack, stroke, deep vein thrombosis, pulmonary embolism and/or death.

107.    Despite the fact that Defendants knew or should have known that their products posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Androderm for use by consumers and continued to fail to comply with federal requirements.

108.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above, including the failure to comply with federal requirements.

109.    It was foreseeable that Defendants' products, as designed, would cause serious injury to consumers including Plaintiff.

110.    As a direct and proximate result of Defendants' negligence, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

111.    Defendants' conduct as described above, including but not limited to their failure to adequately design, test, and manufacture, as well as their continued marketing and distribution of Androderm when they knew or should have known of the serious health risks they created and the failure to comply with federal requirements, evidences a flagrant disregard of human life so as to warrant the imposition of punitive damages.

112.    Defendants' actions and omissions as alleged in this Complaint demonstrate a flagrant disregard for human life and willful and wonton conduct which warrants the imposition of punitive damages.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

113.    Plaintiff incorporates each paragraph of this Complaint as if set forth fully herein and further alleges as follows.

114.    Defendants expressly warranted that Androderm was safe and effective for the treatment of low testosterone, and did not disclose the material risks that Androderm could cause heart attacks, strokes, deep vein thrombosis, pulmonary embolism and/or death. The representations were not justified by the performance of Androderm. Members of the consuming public, such as Plaintiff, and his healthcare providers, were intended third-party beneficiaries of the warranty.

115.    Plaintiff and his healthcare providers reasonably relied on these express representations.

116.   The Androderm manufactured and sold by Defendants did not conform to these express representations because they caused serious injury to Plaintiff when used as recommended and directed, and these risks were not disclosed to Plaintiff or his healthcare providers.

117.   As a direct and proximate result of Defendants' breach of warranty, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

118.   Plaintiff incorporates each paragraph of this Complaint as if set forth fully herein and further alleges as follows.

119.   When Defendants designed, manufactured, marketed, sold and distributed Androderm for use by the Plaintiff, Defendants knew of the use for which it was intended and impliedly warranted the product to be of merchantable quality and safe for such use and that its design, manufacture, labeling and marketing complied with all applicable federal requirements.

120.   Plaintiff and his physicians reasonably relied upon the Defendants' representations of the product's merchantable quality and that it was safe for its intended use, and upon Defendants' implied warranty, including that they were in compliance with all federal requirements.

121.    Contrary to such implied warranty, Androderm was not of merchantable quality or safe for their intended use, because the product was defective, as described herein, and it failed to comply with federal requirements.

122.    As a direct and proximate result of Defendants' breach of warranty, the Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## SEVENTH CAUSE OF ACTION
## FRAUD

123.    Plaintiff incorporates each paragraph of this Complaint as if set forth fully herein and further alleges as follows.

124.    Defendants, from the time they first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed Androderm and up to the present, willfully deceived Plaintiff by concealing from him, his physicians and the general public, the true facts concerning Androderm which the Defendants had a duty to disclose.

125.    At all times herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of Androderm and willfully deceived Plaintiff, Plaintiffs physicians and the general public as to the benefits, health risks and consequences of using Androderm. Defendants knew of the foregoing, that Androderm was not safe, fit and effective for human use, that using Androderm is hazardous to health, and that Androderm has a propensity to cause serious injuries, including but not limited to the injuries Plaintiff suffered.

126. Defendants concealed and suppressed the true facts concerning Androderm with the intent to defraud Plaintiff in that Defendants knew the Plaintiff's physicians would not prescribe Androderm, and Plaintiff would not have used Androderm, if they were aware of the true facts concerning the dangers.

127. As a result of Defendants' fraudulent and deceitful conduct, Plaintiff suffered injuries and damages as alleged herein.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

**EIGHTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**

128. Plaintiff incorporates each paragraph of this Complaint as if set forth fully herein and further alleges as follows.

129. From the time Androderm was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants "made misrepresentations to Plaintiff, Plaintiff's physicians and the general public, including but not limited to the misrepresentations that Androderm was safe, fit and effective for human use. At all times mentioned, Defendants conducted a sales and marketing campaign to promote the sale of Androderm and willfully deceived Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences of the use of Androderm.

130. The Defendants made the foregoing representation without any reasonable ground for believing them to be true. These representations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written

24

materials directed to physicians, medical patients and the public, with the intention of inducing reliance and prescription, purchase and use of the subject products.

131.   The representations by the Defendants were in fact false, in that Androderm was not safe, fit and effective for human consumption, using Androderm is hazardous to health and Androderm has a propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff.

132.   The foregoing representations by Defendants, and each of them, were made with the intention of inducing reliance and the prescription, purhchase and use of Androderm.

133.   In reliance on the misrepresentations by the Defendants, and each of them, Plaintiff was induced to purchase and use Androderm. If Plaintiff had known of the true facts and the facts concealed by the Defendants, Plaintiff would not have used Androderm. The reliance of Plaintiff upon Defendants' misrepresentations was justified and such misrepresentations were made and conducted by individuals and entites that were in a position to know the true facts.

134.   As a result of the foregoing negligent misrepresentations by Defendants, Plaintiff suffered injuries and damages as alleged herein.

WHEREFORE, Plaintiff respectfully requests an award of compensatory and punitive damages, in addition to all costs, interest and fees, including attorneys' fees, to which he is entitled under law and such other relief as this Honorable Court deems appropriate.

## **RELIEF REQUESTED**

WHEREFORE Plaintiff prays for judgment against Defendants and, as appropriate to each cause of action alleged and as appropriate to the standing of Plaintiff, as follows:

1. Past and future general damages, the exact amount of which has yet to be ascertained, in an amount according to proof at the time of trial and which will conform to proof at time of trial;

2. Past and future economic and special damages according to proof at the time of trial;

3. Loss of earnings and impaired earning capacity according to proof at the time of trial;

4. Medical expenses, past and future, according to proof at the time of trial;

5. Past and future pain and suffering damages, including mental and emotional stress arising from Plaintiff's physical injuries, according to proof at the time of trial;

6. Equitable relief as requested and/or as the Court deems just and proper;

7. Declaratory judgment that Defendants are liable to Plaintiff for all future evaluative, monitoring, diagnostic, preventative, and corrective medical, surgical, and incidental expenses, costs and losses caused by Defendants' wrongdoing;

8. Medical monitoring, whether denominated as damages or in the form of equitable relief;

9. Punitive or exemplary damages according to proof at the time of trial;

10. Costs of suit incurred herein;

11. Pre-judgment interest as provided by law; and

12. Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all counts and as to all issues.

Dated: January 29, 2015          Respectfully submitted,

*/s/  Daniel J. Carr*

Daniel J. Carr
Joseph C. Peiffer
**PEIFFER ROSCA WOLF
ABDULLAH CARR & KANE**
A Professional Law Corporation
201 St. Charles Ave., Suite 4610
New Orleans, LA 70170
Tel: (504) 523-2434
Fax: (540) 523-2464
dcarr@prwlegal.com
jpeiffer@prwlegal.com

*/s/  Michael B. Lynch*

Michael B. Lynch
**THE MICHAEL BRADY LYNCH FIRM**
127 West Fairbanks Ave., #528
Winter Park, FL 32789
Tel: (877) 513-9517
Fax: (321) 972-3568
michael@mblynchfirm.com

**Attorneys for Plaintiff**